WILLIAMS LAW FIRM, P.C.
MARK S. WILLIAMS
NICHOLAS J. PAGNOTTA
235 E. Pine
P.O. Box 9440
Missoula, Montana 59807-9440
Telephone:  (406) 721-4350
Facsimile:  (406) 721-6037
E-Mail: nick@wmslaw.com

DION N. COMINOS (CSBN: 136522)
BRIAN P. MASCHLER (CSBN:  111824)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054
E-Mail: dcominos@gordonrees.com

Attorneys for Defendant
CACV of Colorado, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## GREAT FALLS DIVISION

|  |  |
|---|---|
| JEANIE COLE, CATHY SWITTERS, and JAMES MOSTI,<br><br>Plaintiffs,<br><br>vs.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, et al.,<br><br>Defendants. | HON. KEITH STRONG<br><br>**CAUSE NO. CV-08-036-GF**<br><br>**DEFENDANT CACV OF COLORADO, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br>**[Fed. R. Civ. P. 12(b)(1), 12(b)(6)]** |

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ..........................................................................................1

THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT ................4

ARGUMENT ...............................................................................................5

I.     APPLICABLE LEGAL STANDARDS .......................................................5

II.    PLAINTIFFS' CLAIMS AGAINST CACV ARE BARRED UNDER THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL. ..........................................................................................6

III.   SWITTERS' CLAIMS AGAINST CACV ARE BARRED UNDER THE *ROOKER-FELDMAN* DOCTRINE. ......................................................9

IV.    MOSTI'S CLAIMS ARE NOT RIPE FOR REVIEW. ................................11

V.     THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED AS TO CACV BECAUSE PLAINTIFFS HAVE FAILED TO STATE A VALID CAUSE OF ACTION UNDER RICO. ...........................................12

     A.     The Filing of Documents In Litigation Does Not Give Rise To A Valid RICO Claim. .................................................................13

     B.     Plaintiffs Have Failed To Meet The Fundamental Pleading Requirements Of RICO. ........................................................15

          1.     Plaintiffs Have Failed to Plead Adequately The Necessary Elements of a RICO Predicate Act. .........................15

               a     Plaintiffs Cannot Allege a Valid Predicate Act of Extortion Under 18 U.S.C. § 894. ...................................16

               b     Plaintiffs Cannot Allege a Valid Predicate Act of Identity Theft under 18 U.S.C. § 1028. ..........................18

               c     Plaintiffs Cannot Plead a Valid Predicate Act of Mail or Wire Fraud Under 18 U.S.C. §§ 1341, 1343 ........................................................................18

          2.     Plaintiffs Have Failed To Plead That An Alleged RICO Violation Proximately Caused Them Legally Cognizable Damage. ...................................................................20

VI.    COUNT TWO OF THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A VALID CLAIM UNDER THE FDCPA. ......................................................................23

     A.     Switters' Claims Are Barred By The FDCPA's One-Year Statute Of Limitations. .............................................................23

**TABLE OF CONTENTS**

**Page No.**

B.   Mosti Cannot State A Valid Claim Under the FDCPA Because He Was Represented By Counsel In The Underlying State Court Action. ..................................................................23

VII.   PLAINTIFFS' STATE LAW CLAIMS (COUNTS III, IV, AND V) SHOULD BE DISMISSED. ...................................................24

A.   If Plaintiffs' Federal Claims Are Dismissed, The Court Should Decline To Assert Supplemental Jurisdiction Over The Alleged State Claims. ..............................................................24

B.   Plaintiffs' State Law Claims Are Barred By The Litigation Privilege. ..............................................................25

CONCLUSION ..................................................................27

# TABLE OF AUTHORITIES

**Page No.**

## Cases

*Alan Neuman Productions, Inc. v. Albright*
862 F.2d 1388 (9th Cir. 1988), *cert. denied*, 493 U.S. 858 (1989)......................20

*Anza v. Ideal Steel Supply Corp.*
547 U.S. 451 (1985) .......................................................................... 21, 22

*Associated Gen. Contractors of Am. v. Metropolitan Water Dist.*
159 F.3d 1178 (9th Cir. 1998) ...............................................................6

*Auburn Medical Center, Inc. v. Andrus*
9 F.Supp.2d 1291 (M.D. Ala. 1998) ........................................... 13, 14

*Balistreri v. Pacifica Police Dep't.*
901 F.2d 696 (9th Cir. 1988)...................................................................5

*Barron v. Reich*
13 F.3d 1370 (9th Cir. 1994)...................................................................5

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)...............................................................................5

*Bianchi v. Rylaarsdam*
334 F.3d 895 (9th Cir. 2003).................................................................10

*Boyd v. First Interstate Bank of Kalispell, N.A.*
253 Mont. 214 (1992) ............................................................................9

*Brandenburg v. Seidel*
859 F.2d 1179 (4th Cir. 1988) .............................................................19

*Butte Mining Plc. v. Smith*
876 F.Supp. 1153 (D. Mont. 1995).......................................................24

*Canyon County v. Syngenta Seeds, Inc.*
519 F.3d 969 (9th Cir. 2008)........................................................ 21, 22

*Clegg v. Cult Awareness Network*
18 F.3d 752 (9th Cir. 1994)....................................................................5

*D.C. Court of Appeals v. Feldman*
460 U.S. 462 (1983) .............................................................................10

*Daddona v. Gaudio*
156 F.Supp.2d 153 (D. Conn. 2000).............................................. 13, 14

*DeMauro v. DeMauro*
115 F.3d 94 (1st Cir. 1997) ..................................................................11

# TABLE OF AUTHORITIES

**Page No.**

*Diaz v. Gates*
420 F.3d 897 (9th Cir. 2005)...............................................................22

*Feinstein v. Resolution Trust Corp.*
942 F.2d 34 (1st Cir. 1991)................................................................20

*First Nationwide Bank v. Gelt Funding Corp.*
27 F.3d 763 (2d. Cir. 1994), *cert. denied,* 513 U.S. 1079 (1995).......................11

*Gidding v. Anderson*
C 07-04755 JWW, 2009 WL 666954, *4 (N.D. Cal. Mar. 13, 2009) .......... 20, 22

*Guerrero v. RJM Acquisitions, LLC*
499 F3d 926 (9th Cir. 2007)................................................................24

*Hagendorf v. Brown*
699 F.2d 478 (9th Cir. 1983)...............................................................25

*Henrichs v. Valley View Dev.*
474 F.3d 609 (9th Cir. 2007)................................................................9

*Holmes v. Securities Investor Protection Corp.*
503 U.S. 258 (1992) ............................................................... 15, 21, 22

*Howard v. America Online, Inc.*
208 F.3d 741 (9th Cir. 2000)................................................................6

*In re Syntex Corp. Sec. Litig.*
95 F.3d 922 (9th Cir. 1996)................................................................5

*Jennings v. Emry*
910 F.2d 1434  (7th Cir. 1990) ............................................................6

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*
940 F.2d 397 (9th Cir. 1991), *cert. denied,* 502 U.S. 1094 (1992)....................19

*Lande v. Billings Hospitality, Inc.*
No. CV-06-133-BLG-RFC, 2008 WL 4180002 (D. Mont. Sept. 10, 2008) .........7

*Levald, Inc. v. City of Palm Desert*
998 F.2d 680 (9th Cir. 1993)...............................................................24

*Lincoln House Inc. v. Dupre*
903 F.2d 845 (1st Cir. 1990) ..............................................................12

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*
431 F.3d 353 (9th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006)....................15

*Livingston Downs Racing Assoc. v. Jefferson Downs Corp.*
257 F.Supp.2d 819 (M.D. La. 2002)......................................................14

# TABLE OF AUTHORITIES

**Page No.**

*Marrese v. American Academy of Orthopaedic Surgeons*
470 U.S. 373 (1985) ...................................................................................7

*McGranahan v. Dahar*
119 N.H. 758, 762-63 (1979) ..................................................................25

*Miller v. Yokohama Tire Corp.*
358 F.3d 616 (9th Cir. 2004) ...................................................................16

*Miranda v. Ponce Federal Bank*
948 F.2d 41 (1st Cir. 1991) ......................................................................13

*Montana Bank of Circle, N.A. v. Ralph Meyers & Son, Inc.*
236 Mont. 236 (1989) ...............................................................................26

*Motorola Credit Corp. v. Uzan*
322 F.3d 130 (2d Cir. 2003)......................................................................12

*Mpoyo v. Litton Electro-Optical Systems*
430 F.3d 985 (9th Cir. 2005).......................................................................6

*Naas v. Stolman*
130 F.3d 892 (9th Cir. 1997).....................................................................23

*Nakahara v. Bal*
No. 97 Civ. 2027 (DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998) 13, 14

*Nodine v. Textron, Inc.*
819 F.2d 347 (1st Cir. 1987) .....................................................................19

*Odom v. Microsoft Corp.*
486 F.3d 541 (9th Cir. 2007) (en banc), *cert. denied* __ U.S. __, 128 S.Ct.
464 (2007) ..................................................................................................20

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Assoc.*
298 F.3d 768 (9th Cir. 2002).....................................................................15

*Oscar v. University Students Co-Operative Ass'n.*
965 F.2d 783 (9th Cir. 1992).....................................................................21

*Owens v. Kaiser Found. Health Plan, Inc.*
244 F.3d 708 (9th Cir. 2001).......................................................................7

*Philbrick v. McDonald*
37 N.D. 16, 163 N.W. 538 (N. Dak. 1917) ................................................8

*PMC, Inc. v. Ferro Corp.*
131 F.R.D. 184 (C.D.Cal. 1990) ...............................................................13

*Provencher v. Buzzell-Plourde Assoc.*
142 N.H. 848 (1998) .................................................................................25

# TABLE OF AUTHORITIES

**Page No.**

*Reusser v. Wachovia Bank, N.A.*
525 F.3d 855 (9th Cir. 2008) ............................................................................. 9, 10

*Richmond v. Nodland*
552 N.W.2d 586 (1996) ...................................................................................26

*Riemers v. Anderson*
680 N.W. 2d. 280 (2004) .................................................................................8

*Robert Sirius General Contractor Corp. v. New Metropolitan Federal
Sav. & Loan Ass'n*
873 F.2d 1401 (11th Cir. 1989) ......................................................................16

*Roedel v. Gardner*
CV-08-30-M-DWM-JCL, 2008 WL 5416388 (D. Mont. June 12, 2008) ..........10

*Scheidler v. Nat'l Org. for Women*
537 U.S. 393 (2003) ........................................................................................17

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*
806 F.2d 1393 (9th Cir. 1986) ................................................................... 16, 19

*Security People, Inc. v. Medco Security Locks, Inc.*
59 F.Supp. 2d 1040 (N.D. Cal. 1999) ............................................................9

*Sedima S.P.R.L v. Imrex Co., Inc.*
473 U.S. 479 (1985) .............................................................................. 15, 16, 20

*Sidhu v. Flecto Co.*
279 F.3d 896 (9th Cir. 2002) ...........................................................................6

*Stone v. Baum*
409 F.Supp.2d 1164 (D.Ariz. 2005) ...............................................................6

*Sybersound Records, Inc. v. UAV Corp.*
517 F.3d 1137 (9th Cir. 2008) ................................................................... 21, 22

*Terra Nova Insur. Co. Ltd. v. Distefano*
663 F.Supp. 809 (D.R.I. 1987) ........................................................................12

*Troutt v. Colorado W. Ins. Co.*
246 F.3d 1150 (9th Cir. 2001) .........................................................................6

*Ungar v. North Dakota State Univ.*
721 N.W.2d 16 (2006) .....................................................................................8

*United States Fire Insur. Co. v. United Limousine Service, Inc.*
303 F.Supp.2d 432 (S.D.N.Y. 2004) ..............................................................12

*United States v. Abbouchi*
502 F.3d 850 (9th Cir. 2007) ..........................................................................18

# TABLE OF AUTHORITIES

**Page No.**

*United States v. Green*
    745 F.2d 1205 (9th Cir. 1984), *cert. denied*, 474 U.S. 925 (1985).....................19

*United States v. Melendrez*
    389 F.3d 829 (9th Cir. 2004).................................................................18

*United States v. Pacione*
    738 F.2d 567 (2d Cir. 1984)............................................................. 16, 17

*United States v. Pendergraft*
    297 F.3d 1198 (11th Cir. 2002) ...........................................................14

*Urological Surgery Prof. Ass'n v. Fecteau Benefits Group, Inc.*
    359 F.Supp. 24 (D. N.H. 2005).............................................................12

*Wagh v. Metris Direct, Inc.*
    348 F.3d 1102 (9th Cir. 2003) .............................................................12

*Wagner v. Miskin*
    660 N.W.2d 593 (2003) ....................................................................26

*Weizmann Institute of Science v. Neschis*
    229 F.Supp.2d 234 (S.D.N.Y. 2002), *amended by* 352 F.3d 1187 (2d Cir.
    2003), *cert. denied*, 541 U.S. 1043 (2004).............................................12

*Western Mining Counsel v. Watt*
    643 F.2d 618 (9th Cir. 1981)..............................................................5

## Statutes

15 U.S.C. section 1692 ...................................................................... 23, 24

18 U.S.C. section 1028 ...................................................................... 3, 18

18 U.S.C. section 1341 ...................................................................... 3, 18

18 U.S.C. section 1343 ...................................................................... 3, 18

18 U.S.C. section 1961 ...................................................................... 13, 15

18 U.S.C. section 1962 ...................................................................... 15, 22

18 U.S.C. section 1964 ...................................................................... 15, 20

18 U.S.C. section 891 ...................................................................... 3, 16, 17

18 U.S.C. section 894 ........................................................................16

28 U.S.C. section 1367 ...................................................................... 4, 24

28 U.S.C. section 1738 ........................................................................7

## TABLE OF AUTHORITIES

**Page No.**

Federal Rules of Civil Procedure, rule 11(b)(1) ......................................................17

Federal Rules of Civil Procedure, rule 12(b)(1) ..................................................1, 5

Federal Rules of Civil Procedure, rule 12(b)(6) ..................................................1, 5

Federal Rules of Civil Procedure, rule 9........................................................... 19, 20

Montana Code Annotated section 27-1-804 ........................................................26

Montana Rules of Civil Procedure, rule 13 .........................................................9

North Dakota Century Code section 14-02-05 .....................................................26

North Dakota Supreme Court Rules, rule 13 .........................................................8

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant, CACV of Colorado, LLC ("CACV") submits the following brief in support of its Motion to Dismiss the Second Amended Complaint ("SAC" or the "Complaint").

## INTRODUCTION

In this action Plaintiffs ask this Court to interfere with the jurisdiction of state courts in actions filed in Montana and North Dakota and to collaterally attack evidentiary rulings, judgments, and settlements reached, or that in the future may be reached, in those other cases. This entire lawsuit is premised upon a law firm's (Johnson, Rodenburg & Launger ["JRL"]) filing of affidavits that are alleged to be procedurally defective. The affidavits were of two designated agents of Providian National Bank, a federally chartered credit card issuer. Importantly, Plaintiffs do not allege that the amounts of their debts stated in those affidavits are incorrect; nor do they deny they are liable exactly as alleged in the state court suits.

There is no question but that issues before the courts in the underlying state court cases are inextricably intertwined with, if not the same as, those that Plaintiffs seek to relitigate here. Most of the Second Amended Complaint consists of a description of what has happened or is pending in the prior-filed state court cases. There also can be no question but that those state courts are best suited to determine, *inter alia*,

(1)     whether to allow the subject affidavits into evidence;

(2)     whether to allow the attorneys of record in those cases an opportunity to cure the deficiencies of the affidavits;

(3)     whether other evidence produced by the attorneys of record in those cases establishes liability on the part of the defendants (plaintiffs herein) irrespective of the deficiencies in that one piece of evidence;

(4)     whether to permit discovery on the circumstances surrounding the preparation of the subject affidavit;

(5)     whether to issue sanctions due to the filing of an allegedly defective affidavit;

(6)     whether the defendants' own admissions or failure to contest liability in the underlying proceedings render the affidavits moot;

(7)     whether any judgment, including a default judgment, entered on the basis of the affidavit should be vacated (on motion or *sua sponte)*; and

(8)     ultimately, whether the filing of the affidavit had any impact whatsoever on the underlying proceedings or their outcome.

Indeed, in one of the underlying cases cited by Plaintiffs in the SAC, the Montana state court granted summary judgment in favor of the defendant (Jeanie Cole) and awarded her sanctions against PRA based at least in part on the filing of the allegedly defective affidavit.  (SAC ¶¶ 23-25).  The courts in which Plaintiffs' claims are properly determined are the same courts in which the affidavits of which they complain were filed.

CACV was not named as a defendant until the filing of the Second Amended Complaint, and is making its first appearance in this case.  The Second Amended Complaint suffers from numerous legal and factual deficiencies that cannot be cured by amendment.

As a threshold matter, Plaintiffs' claims against CACV are barred under the doctrines of *res judicata* and collateral estoppel.[1]  Plaintiffs are precluded from relitigating in this case matters that were before the courts in the underlying actions or which they could have raised therein.

Switters' claims, which arise from a prior judgment in a North Dakota state court case, also are barred by the *Rooker-Feldman* doctrine.  That doctrine, which is jurisdictional, prohibits a federal district court from entertaining a *de facto* appeal of a state court's decision.  Because the issues in the North Dakota state

---

[1] Plaintiff Cole does not assert any claims against CACV.

court case (e.g., the correctness of that court's decision to allow the admission of the subject affidavit and the impact therof, if any) are inextricably bound up with Switters' putative claims here, the latter are barred under *Rooker-Feldman*.

Mosti's alleged causes of action other than his FDCPA claim also should be dismissed because they are not ripe for review.  His underlying state court case is still pending, and the Montana court has yet to rule on a pending motion for summary judgment.  (SAC ¶ 34).

Plaintiffs' attempt to plead RICO against CACV fails miserably.  ***The courts consistently have ruled that the filing of documents in litigation does not constitute a RICO violation.***  To borrow a phrase from Plaintiffs, their misguided attempt to transmute a straightforward state court procedural matter into a federal RICO case "is a complete affront to the legal system."  (SAC ¶ 1.)  Not surprisingly, Plaintiffs have not met and cannot meet RICO's basic pleading requirements.  First, they have failed to plead a viable predicate act.  The criminal extortion statute (18 U.S.C. § 891, *et seq*.) and the identity theft statute (18 U.S.C. § 1028) upon which they rely are by their terms inapplicable to the facts as pled.  Plaintiffs' reliance on the mail and wire fraud statutes (18 U.S.C. §§ 1341, 1343) also is inapt because they have not pled, as required, that CACV acted with a specific intent to defraud them.  Plaintiffs have attempted to bring in CACV under a negligence standard (*see* SAC ¶¶ 74, 77).  That will not sustain a RICO count. Plaintiffs also have failed to meet the heightened particularity standard of pleading applicable to fraud-based RICO claims.

Second, Plaintiffs have failed to meet RICO's stringent requirement that the alleged wrong proximately caused them a legally cognizable injury.  Here the alleged fraud is on the courts in the underlying proceedings – no fraud on these Plaintiffs is alleged.  The state courts' adjudicative processes break any chain of causation.  And because Plaintiffs do not contest that they owed the sums sought to

be collected in the underlying state court proceedings, they cannot even allege a "but for" causal relationship (causation in fact) between the filing of the affidavits and their claimed injury.

Third, Plaintiffs have not pled a valid RICO injury.

Switters' claim against CACV under the federal Fair Debt Collection Practices Act (FDCPA) is barred by the Act's one-year statute of limitations. Under controlling Ninth Circuit precedent, Mosti has failed to plead a valid claim under the FDCPA against CACV.

If both federal causes of action are dismissed, the Court should decline, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over Plaintiffs' state law claims (Counts III-V.)  Plaintiffs' state law claims also are barred by the litigation privilege.

For these reasons, Plaintiffs' claims against CACV should be dismissed with prejudice.

## THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiffs allege that two designated agents of Providian Bank (the original credit card issuer), prepared affidavits attesting to credit card debts owed by Plaintiffs.  Those affiants, who were employed by WaMu (Providian's successor) and resided in Texas, had their signatures notarized by licensed notaries public, who signed and affixed their Texas state notary seals to the affidavits.  (SAC ¶¶ 28-30, 34-35.)

Plaintiffs further allege that WaMu sent the affidavits to CACV (who had purchased the debts from Providian) and/or its counsel, JRL, and that JRL in turn filed the affidavits in underlying state court cases.  (*Id.; id.* at ¶ 43.)

Plaintiffs' theory of liability, including their far-flung RICO count, rests on the notion that CACV (1) was not entitled to rely on sworn, duly notarized affidavits signed by designated agents of a national banking association, and (2)

was not entitled to rely on its counsel of record, JRL, to apprehend any problems with those affidavits in discharging their professional responsibilities.  From a pleading standpoint, Plaintiffs' attempt to bring CACV into the mix does not meet the "plausibility" standard set by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007).  As discussed below, basic flaws in the SAC preclude the claims alleged against CACV.

## ARGUMENT

## I.   APPLICABLE LEGAL STANDARDS

Pursuant to Rule 12(b)(1), because the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, Switters' claims should be dismissed.  Pursuant to Rule 12(b)(6), both Switters' and Mosti's claims should be dismissed as they fail to state a claim upon which relief can be granted.  Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

While the Court must accept as true all material allegations in the complaint in evaluating a Rule 12(b)(6) motion, *e.g., Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994), the Court need <u>not</u> accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Similarly, the Court is not bound to accept unreasonable inferences or unwarranted deductions of fact.  *Western Mining Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).  "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. at 550.

In the RICO context, "conclusory allegations [also] are insufficient to preclude dismissal." *Howard v. America Online, Inc.*, 208 F.3d 741, 750 (9th Cir. 2000), citing *Associated Gen. Contractors of Am. v. Metropolitan Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). *See also Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) ("In pleading [RICO] predicate acts, conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations"); *Stone v. Baum*, 409 F.Supp.2d 1164, 1173 (D.Ariz. 2005) (motion to dismiss RICO claim granted and sanctions awarded defendant, the court noting that "[c]onclusory and vague allegations will not support a cause of action").

## II.   PLAINTIFFS' CLAIMS AGAINST CACV ARE BARRED UNDER THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL

Plaintiffs seek to re-litigate (as to Switters), or litigate in parallel (as to Mosti), the issues before the state courts attending the filing of allegedly defective affidavits. By Plaintiffs' own pleadings, the parties (Plaintiffs and CACV) in the prior filed actions and this one are the same. All of the issues and claims they raise derivatively in this case were or are being litigated in the underlying state court proceedings, may be litigated still, or could have been raised and litigated. These claims are barred by the doctrines of *res judicata* and collateral estoppel.

"Res judicata applies when the earlier suit … (1) involved the same claim or cause of action as the latter suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)). *Res judicata* bars not only the claims brought in the prior suit but also those claims that could have been brought. *See Troutt v. Colorado W. Ins. Co.*, 246 F.3d 1150, 1156 (9th Cir. 2001) (applying Montana's *res judicata*

doctrine to determine preclusive effect of Montana state court judgment on subsequent federal action); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (concluding that *res judicata* doctrine barred Title VII claims that could have been included in state court complaints).

As this Court recently stated in *Lande v. Billings Hospitality, Inc.*, No. CV-06-133-BLG-RFC, 2008 WL 4180002 (D. Mont. Sept. 10, 2008),

> Under the full faith and credit statute, federal courts must "give collateral estoppel and res judicata effects to the judgments of state courts." *Enquist v. Oregon Dept. of Agriculture,* 478 F.3d 985, 1007 (9th Cir. 2007) (citing *Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712 (9th Cir. 1992); 28 U.S.C. § 1738). The fundamental purposes behind the full faith and credit statute are "promotion of comity and the conservation of judicial resources." *Montenay International Corp.*, 973 F.2d at 714. In short, where state court decisions are entitled to preclusive effect under state law, the parties cannot relitigate the same issues in federal court.

*Id.* at *5 (rejecting plaintiff's attempt to assert a Montana civil rights claim in second action because it was "based on the same nucleus of operative facts" as the claims before a South Dakota court, and [plaintiff] "cannot now attempt to circumvent the doctrine of claim preclusion by merely alleging a different theory of recovery.")

In determining the preclusive effect of a prior state court judgment or ruling, federal courts are to apply the preclusion law of the state in which the judgment was rendered.  *See* 28 U.S.C. § 1738; *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380-81 (1985).

Thus, as to Switters, reference to North Dakota law is appropriate.  The North Dakota Supreme Court has articulated these preclusion doctrines as follows:

> Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies... Res judicata applies even if subsequent claims are based upon a different legal theory. Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by

> logical and necessary implication must have been litigated, and decided in the prior action.

*Ungar v. North Dakota State Univ.*, 721 N.W.2d 16, 20-21 (N.D. 2006) (citations omitted) (summary judgment upheld on the grounds that res judicata and collateral estoppel barred the plaintiff from litigating in a second action claims that could have been asserted in the first action); *see also Riemers v. Anderson*, 680 N.W. 2d. 280, 295 (N.D. 2004).

Here, Plaintiffs allege JRL filed an allegedly defective affidavit in a North Dakota District Court case against Ms. Switters.  (SAC ¶ 28).  Plaintiffs further allege that as a consequence of JRL's failure to make "any effort to correct the record or apprise Judge Narem in the Switters' state court case," the North Dakota court entered a default judgment against Ms. Switters.  (*Id.* at ¶ 30).  Thus, before the North Dakota court was the issue of the procedural correctness and propriety of the subject affidavit.  Switters could have raised, but apparently did not, any and all issues concerning the correctness of the subject affidavit -- either by appearing and contesting its admission, opposing a motion for entry of default, or seeking to set aside a default judgment.  Putting aside merits, Switters could have filed in the underlying state court action a counterclaim decrying the same alleged misconduct and raising the same claims she has pled in this case.[2]  Such claims concerning the correctness and propriety of the subject affidavit are thus barred in this follow-on, federal case under the doctrines of *res judicata* and collateral estoppel.  In North Dakota, the doctrine of *res judicata* applies to a default judgment with the same force as to a judgment rendered after a trial.  *Philbrick v. McDonald*, 163 N.W. 538 (N.D. 1917).

Plaintiffs also allege that JRL filed an allegedly defective affidavit in the

---

[2] Under North Dakota procedure, a defendant is obligated to assert, by way of compulsory counterclaim, any claims against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the opposing party's claim. North Dakota Supreme Court Rules, rule 13(a).

state court proceeding in which Mosti (represented by counsel) is the defendant. (SAC ¶ 34). The correctness and propriety of that affidavit, which Mosti attempts to make a centerpiece of his claims in this case, are squarely before the court in the Montana state court case. Mosti not only could raise, but presumably can still raise the alleged defects of the subject affidavit-- defensively or through affirmative counterclaims.

In Mosti's state court action, a motion for summary judgment is now pending. (SAC ¶ 34). When judgment is entered in that case, he too will be barred from relitigating issues and claims that were raised and decided, and/or could have been raised therein. *See Security People, Inc. v. Medco Security Locks, Inc.*, 59 F.Supp. 2d 1040, 1045 (N.D. Cal. 1999) ("a disposition by summary judgment is a decision on the merits and it is … final and conclusive" for issue/claim preclusion purposes.)[3]

## III. SWITTERS' CLAIMS AGAINST CACV ARE BARRED UNDER THE *ROOKER-FELDMAN* DOCTRINE

"The *Rooker-Feldman* doctrine is a well-established jurisdictional rule prohibiting federal district courts from exercising appellate review over final state court judgments." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858-59 (9th Cir. 2008) (citing *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007)). The Ninth Circuit has ruled "*Rooker-Feldman* may … apply where the parties do not directly contest the merits of a state court decision, as the doctrine prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment." *Reusser,* 525 F.3d at 859. "A

---

[3] Since Mosti's claims arise from a Montana state court action (see SAC ¶¶ 32-36), Montana preclusion law applies. *See Boyd v. First Interstate Bank of Kalispell, N.A.*, 253 Mont. 214, 218 (1992). Under Montana procedure, Mosti is required to raise by counterclaim against opposing party CACV all claims that arise out of the transaction or occurrence that is the subject matter of the opposing party's claim. Mont. R.Civ.P., Rule 13(a).

federal action constitutes such a *de facto* appeal where claims raised in a federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claim would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.*, quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "In such circumstances, 'the district court is in essence being called upon to review the state court decision.'" *Reusser*, 525 F.3d at 859, quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983).

In *Roedel v. Gardner*, CV-08-30-M-DWM-JCL, 2008 WL 5416388 (D. Mont. June 12, 2008), this Court, on facts similar to those at bar, ruled that it lacked jurisdiction under *Rooker-Feldman* over federal claims arising from a previously adjudicated state court case.[4] In *Roedel*, at issue in the prior state court case was an allegedly fraudulent transfer of real property. The plaintiff claimed that the defendant acted without plaintiff's consent and knew or should have known that the transfer was fraudulent. *Id.* at *3. The plaintiff filed a RICO claim in the subsequent federal case. Applying *Reusser*, *supra*, this Court dismissed the plaintiff's federal claims (including RICO), noting:

> Thus, even if Plaintiff is raising federal issues which were not brought in the state court action, this court cannot review the decision of the Montana state courts.

*Id.* at **3-4.

Switters is precisely the type of plaintiff at whom the *Rooker-Feldman* doctrine is aimed, a disgruntled state court loser who is complaining, even though she allowed a default to be entered, that she has been damaged by the state court judgment. It is beyond dispute that the claims raised by Switters in this case are "inextricably intertwined" with the North Dakota State Court's decisions,

---

[4] The Court also ruled that the plaintiff's claims were barred by the doctrine of *res judicata*.

particularly with respect to the admissibility, weight, and ultimate import of the allegedly defective affidavit filed in that underlying proceeding.  As noted above, determining, for example, whether Switters has been damaged in the first instance and thus has standing to sue would require this Court to assess not only the correctness and propriety of the affidavit itself, but also to interpret the state court's rulings with respect to that piece of evidence.  This Court could not avoid interpreting the North Dakota court's application of its state laws and procedural rules.  Therefore, under *Rooker-Feldman*, this Court does not have subject matter jurisdiction to entertain Switters' derivative claims.[5]

## IV.   MOSTI'S CLAIMS ARE NOT RIPE FOR REVIEW

In order for a plaintiff to meet Article III of the Constitution's requirement of a "justiciable case or controversy," his claims must be ripe for review, *i.e.*, he must have suffered a legally cognizable injury that is susceptible of determination.  "[A]s a general rule, a cause of action does not accrue … until the amount of damages becomes clear and definite."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768-69 (2d. Cir. 1994), *cert. denied,* 513 U.S. 1079 (1995).  Claims are not ripe for review where the claimed injury is speculative.  *E.g.*, *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997).

The claims in the Mosti state court action are still pending; there has been no final judgment.  (SAC ¶ 36).  Thus, Mosti is still free to raise, by defense or counterclaim, any and all of the issues surrounding the subject affidavit that he has attempted to raise in this case.  If the Montana state court were to deny the admission of the affidavit or rule that objections to its admissibility were moot given the weight of other evidence introduced against Mosti, Mosti would have suffered no legal damage as a result of the introduction of the affidavit.  Thus, with the possible exception of his purported FDCPA claim, it would be premature to

---

[5] CACV does not assert the *Rooker-Feldman* doctrine against Mosti at this time.

adjudicate Mosti's claims here.  His claims are unripe, and should be dismissed. *See Lincoln House Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (RICO claim dismissed as not ripe for resolution as plaintiff's standing were contingent on uncertain outcome of pending state court case); *Terra Nova Insur. Co. Ltd. v. Distefano*, 663 F.Supp. 809 (D.R.I. 1987) (where insurer's RICO action against insured was dependent on the outcome of state court suit brought by insured against insurer, RICO claim was not ripe).  *See also Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (RICO claims arising out of third parties' failure to pay loans and actions to dilute value of stock securing the loans were not ripe; lenders lacked standing to pursue them until they had first foreclosed on loans); *Urological Surgery Prof. Ass'n v. Fecteau Benefits Group, Inc*., 359 F.Supp. 24, 26 (D. N.H. 2005) (dismissing as unripe ERISA and New Hampshire state law claims where underlying case was still pending.)

## V.  THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED AS TO CACV BECAUSE PLAINTIFFS HAVE FAILED TO STATE A VALID CAUSE OF ACTION UNDER RICO

As numerous courts have recognized, the trial court serves an invaluable gatekeeper function in ferreting out obvious abuses of the RICO statute and its built-in, *in terrorem* prospect of treble damages.  The "need for expeditious and orderly progress of litigation is particularly pronounced in a civil RICO suit because of its quasi-criminal nature and consequent stigmatizing effect on those named as defendants.  Courts should therefore strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003); *United States Fire Insur. Co. v. United Limousine Service, Inc.*, 303 F.Supp.2d 432, 443 (S.D.N.Y. 2004) (same); *Weizmann Institute of Science v. Neschis*, 229 F.Supp.2d 234, 245 (S.D.N.Y. 2002), *amended by* 352 F.3d 1187 (2d Cir. 2003), *cert. denied*, 541 U.S. 1043 (2004) (same).  The District

Court for the Central District of California put it this way:

> Like other courts, and perhaps Congress, this Court is legitimately concerned about the misuse of civil RICO … To sketch what is becoming more frequent is to understand the dangers of abusing the RICO weapon.  Even if one ignores the effect of spurious treble damage suits, the damage of protracted and extraordinarily expensive discovery rendered by civil RICO claims is all too real.

*PMC, Inc. v. Ferro Corp.*, 131 F.R.D. 184, 187 (C.D.Cal. 1990).  *See also Miranda v. Ponce Federal Bank*, 948 F.2d 41 (1st Cir. 1991) ("[C]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device").

The RICO landscape is littered with ill-conceived attempts to shoehorn alleged civil misconduct into one of the indictable criminal violations enumerated in 18 U.S.C. § 1961(B).  This is such a case.  Count I should be dismissed with prejudice.

## A.    The Filing of Documents In Litigation Does Not Give Rise To A Valid RICO Claim

The courts have ruled consistently that the filing of documents in litigation, even if carried out by means of the mails or wires, cannot itself constitute "racketeering activity" actionable under RICO.  In *Daddona v. Gaudio*, 156 F.Supp.2d 153 (D. Conn. 2000), the plaintiff's purported RICO claim, like Plaintiffs' RICO count here, was predicated upon the "filing of false documents and affidavits."  *Id*. at 162.  The court ruled that such conduct failed to state a claim under RICO, and granted the defendant's motion to dismiss.  The court stated:

> [Plaintiff's] allegations at best amount to a vague abuse of process or malicious prosecution claim.  Courts have found that allegations of malicious prosecution or abuse of process do not, on their own, suffice as predicate acts for a RICO violation.  *See, e.g., von Bulow v. von Bulow*, 657 F.Supp. 1134, 1145 (S.D.N.Y. 1987) ("a complaint based on nothing more than a party's filing of unjustified suits cannot fulfill the requirement that a RICO plaintiff plead a predicate act"); *Nakahara v. Bal*, No. 97 Civ. 2027 (DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998) (same); *Auburn Medical Center, Inc. v. Andrus*, 9 F.Supp.2d 1291, 1299 (M.D. Ala. 1998) (same).  As the Eighth Circuit noted in *dicta*,

> Judges and lawyers often complain that the courts are inundated with a flood of litigation, but the fact remains that litigation is as American as apple pie.  If a suit is groundless or filed in bad faith, the law of torts may provide a remedy.  Resort to a federal criminal statute is unnecessary.  *I. S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267-268 (8th Cir. 1984).
>
> Attempts to characterize abuse of process or malicious prosecution claims as mail or wire fraud violations for RICO purposes have been scrutinized by the courts, *and have been rejected where the only allegedly fraudulent conduct relates to the filing of documents in litigation*.

156 F.Supp. at 162 (Emphasis added).

In *United States v. Pendergraft*, 297 F.3d 1198, 1208-09 (11th Cir. 2002), the Court, citing *Daddona*, ruled that the filing and service of a false affidavit in support of a motion did not constitute actionable mail or wire fraud.  The Court stated:

> Serving a motion by mail is an oridinary litigation practice.  A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and have rejected that possibility.   Again, prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system . . .  Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecution into federal RICO actions.

*Id.* at 1208.  *See also Livingston Downs Racing Assoc. v. Jefferson Downs Corp.*, 257 F.Supp.2d 819, 832 (M.D. La. 2002) ("The Court notes that many other courts have rejected the notion that filing litigation documents can serve as the basis of a RICO violation"); *Auburn Medical Center*, 9 F.Supp.2d at 1297 (dismissing RICO claim, the court noting that "despite plaintiff's efforts to couch its claim concerning defendants' litigation activities in terms of fraud, plaintiff, in essence, [was] stating a claim for malicious prosecution"); *Nakahara*, 1998 WL 35123 at *9, *11 (perjurious statements made in court did not constitute RICO predicate; plaintiffs had "at most pled [ ] an inchoate claim for malicious prosecution and at bottom fail

[ ] adequately to allege the predicate acts of mail and wire fraud that are posited as the basis for their RICO action.")

In the present case also, "the only allegedly fraudulent conduct relates to the filing of documents in litigation." Plaintiffs have put forth an inchoate malicious prosecution or abuse of process claim masquerading as a RICO cause of action. As a matter of law, their gambit must fail.

### B. Plaintiffs Have Failed To Meet The Fundamental Pleading Requirements Of RICO.

To state a claim under RICO, the plaintiff must meet two pleading burdens. First, the plaintiff must properly allege all of the elements of a criminal RICO violation, specifically, that (1) a "person," (2) through the commission of two or more predicate acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. Second, the plaintiff must allege that he was injured in his business or property by reason of the conduct constituting the RICO violation. 18 U.S.C. §§ 1962(c), 1964(c); *Sedima S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265-275 (1992); *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006); *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Assoc.*, 298 F.3d 768, 774 (9th Cir. 2002).

Plaintiffs' cause of action for violation of RICO should be dismissed because Plaintiffs have failed to plead adequately (1) a predicate act violation or (2) facts demonstrating that they have been injured in their business or property by reason of the purported RICO violation.

### 1. Plaintiffs Have Failed to Plead Adequately The Necessary Elements of a RICO Predicate Act.

"'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including

any act 'indictable' under certain enumerated federal criminal statutes . . .."
*Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th
Cir. 1986); *see also Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir.
2004).  The conduct used to support a civil RICO action must be <u>indictable</u>.
*Sedima*, 473 U.S. at 481-82; *Miller*, 358 F.3d at 620; *Schreiber Distributing Co.*,
806 F.2d at 1339-1400.  Thus, the plaintiff must plead and prove each prong of the
predicate offense, or "racketeering activity," to maintain a civil action under the
RICO statute.  *Sedima*, 473 U.S. at 488-92.  Plaintiffs' allegations in the SAC are
inadequate to state a criminal violation of <u>any</u> of the three predicate statutes they
have attempted to invoke.

### a   Plaintiffs Cannot Allege a Valid Predicate Act of Extortion Under 18 U.S.C. § 894.

Plaintiffs do not come close to alleging a valid predicate act of "extortion"
under 18 U.S.C. § 894.  They thus have failed to plead a valid RICO predicate act
based on that criminal statute.

To sustain a claim under the Extortion Credit Transaction Act, 18 U.S.C.
§ 891, *et seq.* (also known as the "federal loan sharking statute," *see United States
v. Pacione*, 738 F.2d 567, 568 (2d Cir. 1984)), there must be the use of an
"extortionate means."  18 U.S.C. § 894(a).  "An extortionate means" is "any means
which involves the use, or an express or implicit threat of use, of violence or other
criminal means to cause harm to the person, reputation, or property of any person."
18 U.S.C. § 891(7).  The courts interpreting and applying that section have given a
very narrow interpretation to the term "other criminal means."  Specifically, that
term is limited to the context of violence; its purpose is to prevent and punish loan-
sharking.  *See, e.g., Robert Sirius General Contractor Corp. v. New Metropolitan
Federal Sav. & Loan Ass'n*, 873 F.2d 1401, 1405 (11th Cir. 1989); *United States v.
Pacione,* 738 F.2d at 567.

*Pacione* is directly on point.  There, the United States attempted to prosecute, under 18 U.S.C. § 891, *et seq.*, a creditor's recordation of a conveyance of real property that had recited a false consideration.  The Second Circuit affirmed the dismissal of the 18 U.S.C. § 891 counts from the government's indictment on the grounds that the "other criminal means" language in the statute, construed properly, did not reach such conduct.  The Court stated:

> Our review of the legislative history convinces us that Congress was concerned primarily with the use of actual and threatened violence by members of organized crime engaged in loan sharking and that it did not intend to authorize a federal twenty year punishment for every creditor who violated some other state or federal criminal statute in the process of making or collecting a usurious loan.  In our view, the term "other criminal means" was meant to supplement the context of "violence" so as to punish those who forced their non-paying victims into committing crimes.  We do not now attempt to ascertain the precise limits of the statute, for it is sufficient to conclude that Pacione's activities in preparing and threatening to record a deed and mortgage that recited false considerations, and in actually recording the deed, are beyond those limits and therefore not included within the activities Congress mean to proscribe ….

> Our narrow interpretation is consistent with that previously given the statute in this and other courts.

783 F.2d at 571-72; *see also Scheidler v. Nat'l Org. for Women*, 537 U.S. 393, 409, 411 (2003).

Contrary to this clear authority, Plaintiffs in this action have failed to plead any "extortionate means."  The filing of an allegedly improper affidavit, like the filing of a false recordation instrument, without more, is not "extortionate."  Plaintiffs' attempt to invoke this loan-sharking statute is made even more frivolous by their bootstrapping of their so-called mail and wire fraud claim into this purportedly separate predicate offense -- suggesting, in essence, that Defendants' conduct was "criminal" because the mails and wires were used to "request, deliver, file and serve" the affidavits.  (SAC ¶ 82.)  Does the filing of an affidavit become "extortionate" merely because the mails or wires were used?  Of course not.  Plaintiffs' reliance on this plainly inapposite statute runs afoul of Rule 11(b)(1).

-17-

### b      Plaintiffs Cannot Allege a Valid Predicate Act of Identity Theft under 18 U.S.C. § 1028.

Plaintiffs' reliance on the federal identity theft statute, 18 U.S.C. § 1028, is no less frivolous. That statute makes it unlawful to "knowingly and without lawful authority produce [] an identification document, authentication feature, or false identification document." 18 U.S.C. § 1028(a)(1). As with Plaintiffs' so-called "extortion" allegations, the only conduct cited in their boilerplate allegations on identity theft is the filing of the litigation affidavits. (SAC § 82). An affidavit attesting to the amount of a debt is <u>not</u> an "identification document" within the meaning of 18 U.S.C. § 1028. The Ninth Circuit has made it clear that "[a]n identification document is 'a document intended or commonly accepted for the purpose of identification.' 18 U.S.C. § 1028(d)(2) (2002). A means of identification, in contrast, is the name or number that may often be associated with such a document. 8 U.S.C. § 1028(d)(4). Thus, … Social Security cards and DD forms 214 are identification documents," *United States v. Melendrez*, 389 F.3d 829, 833 (9th Cir. 2004), as are drivers' licenses. *Id*. at 836. Social security cards and resident alien cards also qualify as "identification documents." *United States v. Abbouchi*, 502 F.3d 850, 857 (9th Cir. 2007). Common to all of these "identification documents" is the fact that the "producer" is identifying himself. In this case, nowhere is it alleged that CACV is attempting to identify itself through the subject affidavits of WaMu employees, or otherwise. Plaintiffs' attempt to invoke this statute does violence to its plain language.

### c      Plaintiffs Cannot Plead a Valid Predicate Act of Mail or Wire Fraud Under 18 U.S.C. §§ 1341, 1343

To allege mail fraud or wire fraud, Plaintiffs must allege:

(1)      that Defendants formed a scheme or artifice to defraud;

(2)      that Defendants used or caused the use of the United States' mails or wires in furtherance of the scheme; and

(3)   that Defendants did so with the <u>specific intent to deceive or defraud</u>. *Schreiber Distr. Co*., 806 F.2d at 1399-1400; *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991), *cert. denied,* 502 U.S. 1094 (1992); *United States v. Green*, 745 F.2d 1205, 1207-08 (9th Cir. 1984), *cert. denied*, 474 U.S. 925 (1985).   Switters and Mosti do not allege that CACV acted with a specific intent to deceive or defraud them; neither do they plead facts that could be construed as supporting that conclusion.   To the contrary, Plaintiffs seek to implicate CACV under a negligence standard.   (*See* SAC ¶ 74 [alleging that CACV "knew or should have known" of alleged deficiencies in the affidavits]; ¶ 77 [alleging that CACV's "complicity" in WaMu's actions was "witting or unwitting"]).   There is no such thing as a negligent RICO violation.   *See, e.g., Brandenburg v. Seidel*, 859 F.2d 1179, 1188 (4th Cir. 1988) ("acts of negligence are not predicate acts under the RICO statute"); *Nodine v. Textron, Inc.,* 819 F.2d 347, 348 (1st Cir. 1987).

Significantly, Plaintiffs state that the allegedly false affidavits "were concocted by WaMu employees" (SAC ¶ 49), not CACV employees.   Plaintiffs further allege that WaMu then transmitted those affidavits to CACV and JRL filed those affidavits in various state court proceedings.   (SAC ¶ 49).   The fraudulent act alleged – filing the allegedly defective affidavits with the state courts -- was done by JRL.[6]   JRL also filed in the Mosti case an affidavit of a <u>CACV</u> employee, as to which no "fraud" is alleged (RNJ 5).

Plaintiffs' RICO claim also fails because they have not pled the alleged fraud with sufficient particularity.   Fed.R.Civ.R. 9(b); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007) (en banc), *cert. denied __* U.S. __, 128 S.Ct.

---

[6] Further, while Plaintiffs allege that JRL was "certainly aware" of issues with a prior Kunkle affidavit that had been raised by Plaintiff Cole in a prior case (in which JRL represented PRA) (SAC ¶ 30), CACV <u>was</u> <u>not</u> a party to that case, and thus is not and cannot be charged with such knowledge.

464 (2007); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988), *cert. denied*, 493 U.S. 858 (1989); *Gidding v. Anderson*, C 07-04755 JWW, 2009 WL 666954, *4 (N.D. Cal. Mar. 13, 2009). *See also Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991) (recognizing that the Rule 9(b) particularity standard extends to pleading mail and wire fraud under RICO). Plaintiffs "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d at 553-54. In this case, Plaintiffs have failed to allege any instance of fraud (i.e., a material misrepresentation of fact) *by CACV as against Plaintiffs*. They offer at best vague and conclusory allegations that the subject affidavits were "concocted" by WaMu employees and then transmitted "in bulk" to CACV, PRA and their attorneys. (SAC ¶¶ 46, 49, 74) There are <u>no</u> allegations concerning: WaMu's preparation of the Switters or Mosti affidavits specifically; whether CACV had any knowledge of the circumstances surrounding the preparation of those affidavits; whether any procedural irregularities in those affidavits were intended to deceive or mislead <u>anybody</u> (as opposed to being simply sloppy on the part of WaMu); or whether CACV even saw or reviewed them before they were provided to counsel of record. Thus, Plaintiffs have not pled with Rule 9(b) particularity the facts and "circumstances constituting fraud" <u>by CACV</u> against them.

> **2. Plaintiffs Have Failed To Plead That An Alleged RICO Violation Proximately Caused Them Legally Cognizable Damage.**

As noted, Plaintiffs must plead and prove facts that they were injured in their business or property by reason of the conduct constituting the RICO violation. 18 U.S.C. § 1964(c); *Sedima*, 473 U.S. at 496. The Supreme Court has held that "a plaintiff's right to sue under [Section 1964(c)] require[s] a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the

proximate cause as well." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (1985), *quoting Holmes v. SIPC*, 503 U.S. 258, 268 (1992).  For actionable proximate cause to exist, there must be a "direct relation between the injury asserted and the injurious conduct alleged." *Anza*, 547 U.S. at 457, *quoting Holmes*, 503 U.S. at 268; *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 983 (9th Cir. 2008); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).  This injury must be a "concrete financial loss, and not mere injury to a valuable intangible property interest." *Oscar v. University Students Co-Operative Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) (dismissing a RICO claim on the grounds that plaintiff had alleged a "purely speculative" loss, *id.* at 788); *Berg v. First State Ins. Co.*, 915 F.2d 460, 463-64 (9th Cir. 1990).

The Ninth Circuit recently reaffirmed the Supreme Court's edict in *Anza* and *Holmes* that for proximate cause to exist there must be a "direct relation" between the alleged RICO violation and the claimed injury.  In *Canyon County*, the Court summarized *Anza* as follows:

> [I]n *Anza*, the Supreme Court clarified that the *Holmes* proximate cause requirement not only bars RICO suits by derivative victims, or those whose injuries are "purely contingent on the harm suffered by" direct victims, but generally precludes recovery by those whose injuries are only tenuously related to the RICO violation at issue. Under *Anza*, courts must scrutinize the causal link between the RICO violation and the injury, identifying with precision, both the nature of the violation and the cause of the injury to the plaintiff.  Where the violation itself is not the immediate cause of the plaintiff's injury, proximate cause may be lacking.

519 F.3d at 981 (citations omitted).  The Court ruled that the purported causal chain (between defendants' hiring of illegal immigrants and the County's added fiscal costs) was "far too attenuated" because there were "numerous alternative causes that might be the actual source or sources of the County's alleged harm." *Id.* at 983.  *See also Sybersound Records, Inc.*, 517 F.3d at 1149 (under *Anza*

plaintiff could not "overcome the proximate causation hurdle to assert a RICO violation under 1962(c)."); *Gidding v. Anderson*, C 07-04755JSW, 2009 WL 666954, *8 (N.D. Cal. Mar. 13, 2009) (dismissing RICO count for failure to "establish the necessary element of proximate cause for [plaintiffs'] RICO claim.")

As noted, Plaintiffs do not dispute in the SAC that they owe(d) the debts stated in the subject affidavits.  They do not allege the filing of the affidavits changed what otherwise would have been the results in the underlying state court proceedings.  Their failure to challenge the allegedly improper affidavits is a "superseding cause" of their claimed injury (whatever that is) and thus, like the *Gidding* plaintiffs, they cannot meet the *Holmes/Anza* proximate cause standard.  Indeed, Plaintiffs even cannot allege a "but for" causal relationship between the filing of the affidavits and any legally cognizable injury.  Moreover, the state courts' necessary adjudicative process – deciding in the first instance whether to admit the affidavits and whether they "matter" given other facts and evidence – breaks any chain of causation.  As in *Canyon County* and *Sybersound*, there are a host of alternative, more direct causes for any ultimate payment of the debt owed – *e.g.,* a failure to contest it, the strength of the source documentation and/or the state courts' rulings that facial irregularities in the affidavits were insignificant given that the amounts of the debts stated therein were correct.

Lastly, Plaintiffs have not alleged any viable RICO injury.  "Without a harm to a specific business or property interest – a categorical inquiry typically determined by reference to state law – there is no injury to business or property within the meaning of RICO."  *Canyon County*, 519 F.3d at 975, *quoting Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).  As noted, Mosti's Montana state court action is still pending; thus, any notion of injury to him is speculative.  Neither Mosti nor Switters claim a legitimate property interest in being able to avoid paying an uncontested debt by virtue of a facial irregularity in one of the

-22-

pieces of evidence filed in a collection action.  Again, *they do not contest in this action that they owe(d) the money.*  At the root of their claims is the false premise that they are entitled a windfall due to these procedural missteps in the underlying state court actions.  Not so.  They have failed to plead a viable RICO injury. Therefore, the Court should dismiss Count I with prejudice.

**VI.   COUNT TWO OF THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A VALID CLAIM UNDER THE FDCPA.**

**A.   Switters' Claims Are Barred By The FDCPA's One-Year Statute Of Limitations.**

The FDCPA, at 15 U.S.C. § 1692(k)(d), states that actions to enforce liability for violations of the Act may be brought "within one year from the date on which the violation occurs."  In this case, the alleged violation is the filing of procedurally defective affidavits in the underlying state court actions.

With regard to Switters, the Complaint alleges that the subject affidavit was filed on July 13, 2007.  (SAC ¶ 28).  The Second Amended Complaint, the first pleading filed in this action against CACV, was filed on February 19, 2009, over a year and a half after the filing of the affidavit in the North Dakota state case. Therefore, Switters' claims are time-barred under 15 U.S.C. § 1692(k)(d).  *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (where FDCPA claim is premised on the filing of a state court debt collection suit, the statute of limitations runs from the date of filing).

**B.   Mosti Cannot State A Valid Claim Under the FDCPA Because He Was Represented By Counsel In The Underlying State Court Action.**

The filings of record in the Mosti state court action demonstrate that Mosti was represented by counsel in that proceeding, and that the subject affidavit was

served on Mosti's counsel.  (Request for Judicial Notice [RJN] 1, 4).[7]  In *Guerrero v. RJM Acquisitions, LLC*, 499 F3d 926, 934-35 (9th Cir. 2007), the Ninth Circuit ruled definitively that communications directed to a debtor's attorney are not actionable under 15 U.S.C. § 1692.  Therefore, Mosti has not stated and cannot state a valid claim under that statute against CACV.[8]

## VII.  PLAINTIFFS' STATE LAW CLAIMS (COUNTS III, IV, AND V) SHOULD BE DISMISSED.

### A.  If Plaintiffs' Federal Claims Are Dismissed, The Court Should Decline To Assert Supplemental Jurisdiction Over The Alleged State Claims.

28 U.S.C. § 1367(c)(3) states that a district court may decline to exercise supplemental jurisdiction over a state claim if it "has dismissed all claims over which it has original jurisdiction."  As recognized by this Court in *Butte Mining Plc. v. Smith*, 876 F.Supp. 1153 (D. Mont. 1995), "[i]n the absence of subject matter jurisdiction over the Federal claims, the court is compelled to refrain from exercising supplemental jurisdiction over the remaining state law claims as well."  *Id.* at 1168 (dismissing state claims in light of dismissal of RICO claim).  *See also Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 692 (9th Cir. 1993).

In the present case, with the dismissal of the federal RICO and FDCPA counts, the Court no longer will have any federal claims before it.  The state law

---

[7] Mosti's attorney, James D. Moore, has represented Mosti throughout the Montana state court proceeding.  On Mosti's behalf, Mr. Moore filed, *inter alia*, a motion to dismiss the underlying complaint, an answer to the complaint and (at least) one motion to extend the deadline for filing an opposition to CACV's motion for summary judgment.  (RJN 1, 2, 3, 6)  Attorney Moore, not Mosti, was served with CACV's summary judgment papers, including the subject WaMu affidavit, a CACV affidavit attesting to the amount of the debt owed, and the source documentation (credit card statements) (RJN 4, 5)

[8] Before CACV was named in this case, JRL cited *Guerrero* in its motion to dismiss the original complaint, which was denied.  Respectfully, since Mosti's claims against CACV concern the service of the subject affidavit on his counsel, that it was also filed with the court in the Montana case does not obviate this controlling Ninth Circuit authority.  For FDCPA purposes (and RICO purposes), Plaintiff cannot claim both that <u>he</u> was defrauded by this communication, and that only that the state court was the target of the fraud.

claims therefore should be dismissed.

### B.    Plaintiffs' State Law Claims Are Barred By The Litigation Privilege.

With respect to the litigation privilege, federal courts generally apply the law of the forum state.  *E.g., Hagendorf v. Brown*, 699 F.2d 478 (9th Cir. 1983).  In this action, Plaintiffs pled in the original complaint state claims under Montana law.  (Civil Dkt. No. 1, pp. 7-10).  In the Second Amended Complaint, Plaintiffs change their state law claims to New Hampshire claims.  Plaintiffs rely on the choice of law provision in their credit card contracts with Providian, which provides that "this Agreement and your [Plaintiffs'] Account are governed by Federal law and by New Hampshire law."  (SAC Exh. A, Section 15).  Although Plaintiffs' affirmative claims against CACV in this action could have been brought in the underlying state court proceedings, it is not clear that New Hampshire law would apply to such claims.  For purposes of the litigation privilege, however, that is of little moment because the law of New Hampshire is in accord with the laws of North Dakota and Montana.

"It is well-settled in New Hampshire that certain communications are absolutely privileged and therefore immune from civil suit.  Statements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings."  *Provencher v. Buzzell-Plourde Assoc.*, 142 N.H. 848, 853 (1998).  In *McGranahan v. Dahar*, the New Hampshire Supreme Court articulated the rule as follows:

> An Absolute privilege, however, is tantamount to an immunity.  It is not conditioned on the actor's good faith. Because an Absolute privilege bars an injured party from recovering any recompense, it must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives.  Judicial proceedings constitute one such situation.  . . .

> . . . [T]he general rule is that statements made in the course of judicial proceedings are absolutely privileged from civil actions, provided they are pertinent to the subject of the proceeding.

(119 N.H. 758, 762-63 (1979).)

Here, by Plaintiffs' own admission, the affidavits filed in the underlying state court proceedings "are pertinent or relevant to the proceedings."  Therefore, under New Hampshire law, those communications are absolutely privileged and cannot form the basis of a civil suit.

The same result is mandated under North Dakota and Montana law.  North Dakota Century Code § 14-02-05 provides that "[a] privileged communication is one made:  . . . (2) in any legislative or judicial proceeding or in any other proceeding authorized by law."  Statements made in judicial proceedings are absolutely privileged.  *Wagner v. Miskin*, 660 N.W.2d 593, 596-97 (2003); *Richmond v. Nodland*, 552 N.W.2d 586, 588 (1996) (same).  Therefore, if North Dakota law were applied to Switters' claims, those claims would be absolutely barred under the litigation privilege.

Montana Code Ann. § 27-1-804 also provides that:  "[a] privileged communication is one made: . . . (2) in any legislative or judicial proceeding or in any other official proceeding authorized by law."  Applying this section, the Supreme Court of Montana has stated that:  "[i]t has long been held that statements made in a judicial proceeding are absolutely immune" from suit.  *Montana Bank of Circle, N.A. v. Ralph Meyers & Son, Inc.*, 236 Mont. 236, 245 (1989).  Thus, under Montana's litigation privilege Mosti's state law claims against CACV are barred.

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed in its entirety, with prejudice, against CACV.

Respectfully submitted,

WILLIAMS LAW FIRM, P.C.
MARK S. WILLIAMS, P.C.
NICHOLAS J. PAGNOTTA, ESQ.


Dated:  May 11, 2009           By:  /s/ Nicholas J. Pagnotta
                                    Nicholas J. Pagnotta

GORDON & REES, LLP
DION N. COMINOS
BRIAN P. MASCHLER

*Attorneys for Defendant*
*CACV of Colorado, LLC*


## L.R. 7.1(d)(2)(E) CERTIFICATE OF COMPLIANCE

I, Nicholas J. Pagnotta, hereby certify that the foregoing Defendant CACV of Colorado, LLC's Brief in Support of Motion to Dismiss Second Amended Complaint does not exceed 9,000 words in length, as approved by the Court in its order dated May 7, 2009.  The brief contains 8,644 words, excluding the caption and the certificates of service and compliance.

Dated:  May 11, 2009           By:  /s/ Nicholas J. Pagnotta
                                    Nicholas J. Pagnotta